[Cite as *State v. Black*, 2024-Ohio-2365.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 113312

    v.                           :

DARRELL BLACK,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, MODIFIED IN PART,
                 AND REMANDED
**RELEASED AND JOURNALIZED:** June 20, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681592-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Maalaea Newell and Matthew Moretto,
Assistant Prosecuting Attorneys, *for appellee.*

Susan J. Moran, *for appellant.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Darrell Black ("Black"), appeals his sentence. He contends that the trial court erred at sentencing by (1) relying on untrue and prejudicial statements, thereby denying him due process; (2) imposing consecutive

sentences; and (3) imposing both a prison sentence and a no-contact order. Finding some merit to the appeal, we affirm in part, modify Black's sentence in part, and remand for the trial court to vacate the no-contact order imposed as part of Black's sentence.

## I.    Background

**{¶ 2}**   On May 11, 2023, after Black pleaded guilty in Cuyahoga C.P. CR-23-677827 to one count of breaking and entering and one count of domestic violence, the trial court sentenced him to five years of community control that included various conditions, including that Black have no contact with the victim, R.L.

**{¶ 3}**   Only 16 days later, on May 27, 2023, Cleveland police officers responded to an address at Ingomar Avenue in Cleveland regarding a report of an assault. Officers met with R.L. — the same victim as in CR-677827 — who told them that Black had assaulted her and her son that day and the day before. The officers located Black down the road and apprehended him after a foot chase.

**{¶ 4}**   A Cuyahoga County Grand Jury indicted Black regarding the events of May 26 and 27 on two counts of strangulation of R.L. in violation of R.C. 2903.18(B)(2); two counts of strangulation of R.L. in violation of R.C. 2903.18(B)(3); two counts of domestic violence against R.L. in violation of R.C. 2919.25(A); and one count of assault of R.L.'s son in violation of R.C. 2903.13(A).

**{¶ 5}**   Pursuant to a plea agreement, Black subsequently pleaded guilty to an amended Count 1, strangulation in violation of R.C. 2903.18(B)(3), a fifth-degree

felony, and an amended Count 6, attempted domestic violence in violation of R.C. 2923.02/2919.25(A), also a fifth-degree felony. The remaining counts were nolled. At the plea hearing, the prosecutor explained that the significant reduction in the charges was due to the prosecutor's discussions with R.L. and "potentially some recantation on certain counts of this case." Because of the trial court's familiarity with Black due to the earlier case, defense counsel waived a presentence-investigation report.

{¶ 6} At the subsequent sentencing hearing, defense counsel told the judge that one of Black's very close female friends, Jennifer Rivera, who had known Black for 19 years, had told her that Black "is not a violent person at all." Defense counsel noted that Black had been married for 18 years and was Rivera's friend for nearly 19 years and had never had any domestic violence issues other than those involving R.L.

{¶ 7} Defense counsel said that she had listened to many hours of jailhouse calls between R.L. and Black and had many discussions about those calls with the prosecutor, who she asserted "would probably agree that there's a lot of inconsistencies on the jail calls." Defense counsel told the judge that R.L. "constantly" called Black while he was in jail and repeatedly told him she loved him, wanted him back, and that the accusations were "not true, that she never stated these things." Defense counsel stated that at her advice, Black stopped taking any calls from R.L.

**{¶ 8}** Defense counsel said that she had had many long discussions with Black about his relationship with R.L. and that he now realized how toxic the relationship was and that he needed to stay "far away" from her. She reiterated that Black had led a life without domestic violence until R.L. "came around," and argued that probation was appropriate because there was a long period in Black's life where "violence was not a part of his life" and because he is "a very calm individual, very likeable individual" who could do well on probation.

**{¶ 9}** Black then apologized to the court for violating the no-contact order imposed in CR-677827 by "trying to go back and have a relationship with [R.L.]." He said he realized that he was only harming himself by trying to have a relationship with her and that the relationship was now "completely ended."

**{¶ 10}** The prosecutor then explained the facts of the case as set forth in the police report. The prosecutor reported that Cleveland police officers responded to Ingomar Avenue in Cleveland on May 27, 2023, and encountered R.L., who "appeared shaken up and in fear." The prosecutor reported that R.L. told the officers she had been assaulted by her ex-boyfriend, Black, but that she was reluctant to report the assault because she knew Black was "around here somewhere watching," and the last time she reported domestic violence involving Black, "someone broke into her home after he was arrested and put a gun to her head. And stated, I will kill you." (Tr. 59-60.)

**{¶ 11}** Continuing, the prosecutor stated:

Regarding this incident she stated she went on her daily walk around the neighborhood. The defendant approached her at the Ingomar Avenue address, grabbed her by the arm. [R.L.'s] son [C.L.] came from a nearby corner store and had observed the defendant grabbing her arms. Her son then grabbed the defendant by the shirt and then the defendant grabbed him, I believe grabbed [R.L.] by the back — or by her neck and threw her to the ground.

While he was choking [R.L.], her son — he had [C.L.] by the shirt and struck him in the face.

An unknown male then came and broke up the altercation. The defendant then fled.

The victim also told police that the day before on the 26th the defendant had came to her home and entered despite her telling him to leave. The front door was still broken from the last incident; she had not been able to fix it which is how he got in on the 26th.

She said that the defendant had burned her multiple times with a cigarette and strangled her during the incident on the 26th.

She said she called police but when they arrived she told them everything was fine and that she did not need assistance.

Officers located the defendant on Ingomar down the road further and told him to stop. He then fled on foot. A foot pursuit ensued and then he was ultimately detained.

(Tr. 60-61.)

{¶ 12} The prosecutor then told the judge that she agreed with defense counsel that there were "inconsistencies" on the jailhouse calls between R.L. and Black. The prosecutor said she had spoken multiple times with R.L., who told her that she talked to Black while he was in jail as "a way of kind of getting him off her back" and that both she and her children were afraid of him. (Tr. 61.) The prosecutor acknowledged, however, that part of the reason for the plea agreement was because "[R.L.] recanted one day's strangulation but not the other." (Tr. 62.)

Before asking for prison time for Black, the prosecutor told the judge that "oftentimes manipulators or people who are verbally or physically abusive to their significant others are likely not showing that side of themselves to other people. They oftentimes come off very likeable to the rest of the public and, you know, everyone except the person they are abusing. So I would make that aware to the court." (Tr. 63.)

{¶ 13} Defense counsel argued in rebuttal that R.L.'s assertion to the prosecutor that she was talking to Black on the phone while he was in jail in order to "get him off her back" did not explain the excessive number of telephone calls she made to him while he was in jail and that, on one of the calls, R.L. even told Black that she had recently purchased a house and wanted him to move in. Defense counsel argued that R.L. was not a woman who was in fear of Black but was actually a woman who realized "she had alleged something she wanted to take back." (Tr. 64-65.) Counsel therefore asked that Black be sentenced to probation.

{¶ 14} The trial court then sentenced Black to 12 months in prison on each of the two counts to which Black had pleaded guilty and ordered the sentences to run concurrently. The trial court found Black to be in violation of his community-control sanctions in CR-677827, terminated the community control, and imposed a 12-month prison term in that case to be served consecutively to the term imposed in this case, for a total term of two years. This appeal followed.

## II. Law and Analysis

### A. Prosecutorial Statements During the Sentencing Hearing

{¶ 15} In his first assignment of error, Black contends that his sentence is contrary to law because the trial court relied on "prejudicial, irrelevant, and untrue statements" made by the prosecutor during the sentencing hearing, thereby denying him due process.

{¶ 16} We review a challenge to a felony sentence under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 22. Under R.C. 2953.08(G)(2), we may increase, reduce, or otherwise modify a sentence or vacate a sentence and remand for resentencing if we "clearly and convincingly find that the record does not support" certain statutory findings the trial court is required to make, or if the sentence is "otherwise contrary to law." Black contends his sentence is contrary to law because the trial court relied on untrue, irrelevant, and prejudicial statements when sentencing him.

{¶ 17} Black asserts that the prosecutor's statement that R.L. told the police that she was hesitant to tell them about the assaults in this case because someone had broken into her home after an earlier incident, put a gun to her head, and threatened to kill her was improper because he was in custody at the time and, thus, "it was not even [him] who allegedly did this." (Appellant's brief, p. 4.)

{¶ 18} He further contends that the prosecutor improperly read from the police report in reporting the facts of the assault to the trial court because the prosecutor knew from the jailhouse phone calls that R.L. had recanted "all" of the

strangulation allegations. (Appellant's brief, p. 3.) Black contends that in light of R.L.'s recantation, the prosecutor should not have presented the allegations in the police report as though they were true. (Appellant's brief, p. 4.)

{¶ 19} Black also contends that the prosecutor improperly gave her opinion about his character when she "testified" that many abusers portray themselves as very likeable to everyone except the person they are abusing. Black asserts that this "testimony" was prejudicial, irrelevant, and lacked record support. He points to the trial court's statement that it "considered the report itself, the statements made here today, the defendant's prior record, and the nature of the offenses" (tr. 66) as an indication that the trial court improperly relied on the above-recited "prejudicial, irrelevant, and untrue statements" by the prosecutor in sentencing him.

{¶ 20} Black's argument is wholly without merit. A reviewing court "'will presume that a trial court considered only the relevant, material, and competent evidence in arising at its judgment, unless the contrary affirmatively appears from the record.'" *State v. Coleman*, 2023-Ohio-4418, ¶ 11 (8th Dist.), quoting *State v. Ford*, 2019-Ohio-4539, ¶ 140.

{¶ 21} Black points to nothing in the record that affirmatively demonstrates that the trial court considered anything other than relevant, material, and competent evidence in sentencing him. And contrary to Black's arguments, the prosecutor did not make untrue or irrelevant statements at sentencing that were unduly prejudicial to him. The prosecutor did not suggest that R.L. was reluctant to tell the police what happened on May 27 because Black had broken into her house

after an earlier incident, put a gun to her head, and threatened to kill her; the prosecutor was very clear that R.L. said she was reluctant because "someone" broke into her home after Black was arrested in connection with the earlier incident. The prosecutor did not suggest that the person who broke into R.L.'s home was Black; she merely reported what R.L. told the police.

{¶ 22} Furthermore, the prosecutor's recitation of the facts at sentencing from the police report was neither unduly prejudicial nor irrelevant. The prosecutor accurately told the trial court that there were "inconsistencies" in R.L.'s statements to Black during the jailhouse phone calls about what had happened and that R.L. had recanted "one day's strangulation but not the other." Contrary to Black's argument, the prosecutor did not tell the trial court that R.L. had recanted "all" the strangulation allegations. In light of the prosecutor's explanatory statements, the trial court was in the best position to evaluate the veracity of R.L.'s allegations in the police report.

{¶ 23} Finally, the prosecutor's statement that abusers often do not present their abusive nature to the general public was made in response to defense counsel's argument that Black be sentenced to community control because he is nonviolent and "a very likeable individual" who would do well on probation. Defense counsel opened the door to the prosecutor's response that, contrary to Black's argument, was not "testimony" but merely argument that the trial court could properly consider.

{¶ 24} In sum, Black has not pointed to anything that demonstrates the trial court considered anything other than material, relevant, and competent evidence

when sentencing him.  Moreover, even if the state did make any improper argument, "[a]ny effect of an improper argument made by the state at sentencing can be cured by the trial court's independent assessment of the sentencing factors."  *State v. Robinson*, 2022-Ohio-1311, ¶ 52 (8th Dist.).  The record reflects that before sentencing Black, the trial court noted that it was required to base its sentence on the principles and purposes of felony sentencing under R.C. 2929.11, i.e., to protect the public from future harm by the defendant or others and to punish the defendant using the minimum sanctions that the court determines accomplishes those purposes.  (Tr. 66.)  The trial court noted further that it had also considered the seriousness and recidivism factors relevant to the offense and the offender under R.C. 2929.12.  (Tr. 67.)  Thus, any effect of the prosecutor's allegedly improper remarks was cured by the trial court's independent consideration of the sentencing factors and their applicability to Black.  Black's argument that the trial court deprived him of his due process rights at sentencing by considering irrelevant and untrue statements is without merit.  The first assignment of error is overruled.

### B. Consecutive Sentences

{¶ 25} In his second assignment of error, Black contends that the trial court erred in imposing consecutive sentences.  But the trial court did not impose consecutive sentences in this case; it ordered the 12-month sentences imposed on each count be served concurrently.  The consecutive sentence was imposed in CR-677827, wherein the trial court terminated Black's community control, imposed a 12-month sentence, and ordered that sentence to be served consecutive to the

sentence imposed in this case, for a total prison term of two years. Black did not appeal from the sentence imposed in CR-677827; he appealed only from the sentencing entry entered in this case.

{¶ 26} Because no consecutive sentences were imposed in this case and Black did not appeal from the sentence imposed in CR-677827, the propriety of the consecutive sentence imposed in CR-677827 is not for us to decide in this case. The second assignment of error is therefore overruled.

### C. No-Contact Order

{¶ 27} In *State v. Anderson*, 2015-Ohio-2089, the Ohio Supreme Court held that a trial court cannot impose a prison term and a no-contact order for the same felony offense. The court reasoned that a no-contact order is a community-control sanction, and Ohio's statutory scheme makes it clear that prison terms and community control offenses are alternative sanctions for felony offenses. *Id.* at ¶ 17, 31. Thus, a court may impose either a community-control sanction or a prison term for a felony offense but cannot impose both. *Id.* at ¶ 32.

{¶ 28} In his third assignment of error, Black contends that the trial court erred in imposing both a prison term and a no-contact order. The state concedes the error. Pursuant to R.C. 2953.08(G)(2), we modify Black's sentence to delete the no-contact order and remand the case for the trial court to correct its journal entry to reflect this modification. The third assignment of error is sustained.

{¶ 29} Judgment affirmed in part, modified in part, and remanded.

It is ordered that the parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for modification and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
MICHAEL JOHN RYAN, J., CONCUR